IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SEGUNDO ELOY GUAMAN GUASCO, : | CIVIL ACTION NO. 1:25-CV-1650 |
| Petitioner : | (Judge Neary) |
| v. : | |
| BRIAN MCSHANE, KRISTI NOEM, : | |
| AND PAMELA BONDI, : | |
| Respondents : | |

# MEMORANDUM

The wheels of justice turn slowly. That delay can, on rare occasion, be disastrous to a party whose rights continue to be irreparably damaged. In some of these cases, courts intervene to prevent further harm.

An immigration judge found petitioner Segundo Eloy Guaman Guasco eligible for bond in August, but he has remained in custody because respondents Brian McShane, Kristi Noem, and Pamela Bondi (collectively, "the Government") have invoked a regulation that automatically stays the bond order while the Government appeals it. Guasco filed a petition for a writ of habeas corpus in September, and on November 21, 2025, he requested a temporary restraining order ("TRO") and a preliminary injunction against the Government providing for his immediate release. Because Guasco's ongoing detention meets the high bar for injunctive relief, the court will issue a TRO.

I. **Factual Background & Procedural History**

Guasco filed a petition for writ of habeas corpus on September 3, 2025, which he amended on September 25, 2025, and which has been referred by this court to Chief Magistrate Judge Daryl F. Bloom. (Docs. 1, 9-2, 13, 14). The habeas petition presents a panoply of constitutional and statutory challenges to his ongoing detention by the Government, who has invoked 8 C.F.R. §1003.19(i)(2) (the "Automatic Stay Regulation") to automatically stay the immigration judge's bond order upon the Government's filing of a notice of intent to appeal that order to the Board of Immigration Appeals. On November 21, 2025, Guasco requested a TRO and a preliminary injunction against the Government, (Docs. 15, 16), providing for his immediate release.

II. **Legal Standard**

Injunctive relief "is an extraordinary remedy granted in limited circumstances." Issa v. Sch. Dist., 847 F.3d 121, 131 (3d Cir. 2017). The standard for obtaining a temporary restraining order under Federal Rule of Civil Procedure 65 is the same as the standard for obtaining a preliminary injunction. Cerro Fabricated Prods. LLC v. Solanick, 300 F. Supp. 3d 632, 647 n.5 (M.D. Pa. 2018). "A preliminary injunction must be issued with notice to the adverse party. . . . A TRO, in contrast, may be issued without notice where it is clearly shown that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Hope v. Warden York County Prison, 956 F.3d 156, 160 (3d Cir. 2020) (cleaned up).

To obtain a TRO, a plaintiff must demonstrate "(1) he is likely to succeed on the merits, (2) he will suffer irreparable harm without preliminary relief, (3) the balance of equities favors an injunction, and (4) an injunction is in the public interest." Veterans Guardian VA Claim Consulting LLC v. Platkin, 133 F.4th 213, 218 (3d Cir. 2025). "The first two factors are 'gateway factors': A plaintiff must satisfy them both to be eligible for preliminary relief." Id. (citing Reilly v. City of Harrisburg, 858 F.3d 173, 179 (3d Cir. 2017)). The standard to show irreparable harm is demanding and requires the plaintiff to demonstrate such harm is more likely than not to occur absent injunctive relief. Id. (citing Reilly, 858 F.3d at 179). Where, as here, a party seeks a TRO against the government, "the latter two factors merge." Schrader v. Dist. Att'y of York Cnty., 74 F.4th 120, 126 (3d Cir. 2023).

### III. Discussion

Consider first the likelihood of success on the merits. Guasco maintains his ongoing detention violates both his Fifth Amendment procedural and substantive due process rights. See U.S. CONST. AMEND. V; see also Trump v. J. G. G., 604 U.S. 670, 673 (2025) ("'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings.") (quoting Reno v. Flores, 507 U.S. 292, 306 (1993)). Whether Guasco's ongoing detention violates his procedural due process rights requires an assessment of:

> (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and probable value, if any, of additional procedural safeguards; and (3) the Government's interest, including the fiscal and administrative burdens that the additional or substitute procedures would entail.

3

Mathews v. Eldridge, 424 U.S. 319, 321 (1976).

These factors all favor Guasco.[1] First, his private interest is "the interest in being free from physical detention," which is "the most elemental of liberty interests." Hamdi v. Rumsfeld, 542 U.S. 507, 529 (2004); see also Zadvydas v. Davis, 533 U.S. 678, 690 (2001) ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."). The restriction of liberty is particularly acute here as "the automatic stay invoked by DHS does not have a foreseeable end date, since '[i]f the BIA does not resolve the appeal within the ninety-day period, ICE can seek a discretionary stay for an additional 30 days.'" Castillo v. Andra-Ybarra, 25-CV-1074, 2025 WL 3251223, at *7 (D.N.M. Nov. 21, 2025) (quoting Sampiao v. Hyde, No. 25-CV-11981, 2025 WL 2607924, at *10 (D. Mass. Sep. 9, 2025)). Even after this period, the Automatic Stay Regulation permits the Attorney General to order a discretionary stay pending the Government's appeal of the bond order. 8 C.F.R. § 1003.6(d). Thus, as other courts have observed, persons subject to the Automatic Stay Regulation could be detained for months or even years before the Board of Immigration Appeals resolves their bond appeals. See id. (collecting cases). Accordingly, the first Mathews factor strongly favors Guasco.

So too does the second Mathews factor. It bears repeating the Automatic Stay Regulation comes into effect only after an immigration judge has determined an

---

[1] While the court focuses on Guasco's procedural due process claim, it observes his substantive due process claim appears meritorious as well.

4

individual is neither a flight risk nor a danger to the community. The invocation of this regulation neuters the bond order. For decades, courts have assailed the Government's practice of "act[ing] both as the prosecution and the judge in making a unilateral and unreviewed decision as to detention." Id. at *8; Zavala v. Ridge, 310 F. Supp. 2d 1071, 1078 (N.D. Cal. 2004) ("The [Automatic Stay Regulation] additionally creates a potential for error because it conflates the functions of adjudicator and prosecutor."). Therefore, the risk that the Automatic Stay Regulation poses to Guasco's liberty also weighs in his favor.

      Finally, the Government's interests do not weigh in its favor. Its two paramount interests are that an individual facing immigration proceedings does not abscond from justice and does not endanger the community. The immigration judge's bond order accounts for both those concerns. Furthermore, the Government could seek an emergency stay of the bond order pursuant to 8 C.F.R. § 1003.19(i)(1) if it can "demonstrate that it was likely to succeed on the merits of its appeal to the [Board of Immigration Appeals] and that it would suffer irreparable harm in the interim." Zavala, 310 F. Supp. 2d at 1078. "This procedure mitigates the concern about DHS usurping the neutral adjudicatory role and provides additional safeguards that the automatic stay provision lacks." Garcia Jimenez v. Kramer, No. 25-CV-3162, 2025 WL 2374223, at *4 (D. Neb. Aug. 14, 2025). Therefore, the final Mathews factor cuts in Guasco's favor as well.

      Taken together, the Automatic Stay Regulation deprives an individual of due process. This position is shared by over 30 district courts and growing. Lopez v.

Soto, No. 2:25-CV-16303, 2025 WL 2987485, at *2 n.3 (D.N.J. Oct. 23, 2025) (collecting over 30 district court cases which have agreed this regulation is unconstitutional). Thus, Guasco has demonstrated a likelihood of success on the merits.

Guasco will suffer irreparable injury due to his continued detention if his TRO is denied. See Arias Gudino v. Lowe, 785 F. Supp. 3d 27, 46 (M.D. Pa. 2025) ("In the immigration context, unlawful detention is a sufficient irreparable injury."); Hernandez v. Sessions, 872 F.3d 976, 994 (9th Cir. 2017) (concluding "Plaintiffs have established a likelihood of irreparable harm by virtue of the fact that they are likely to be unconstitutionally detained for an indeterminate period of time.").

Finally, both the balance of the equities and the public interest favor granting a TRO here. The government suffers no undue burden from Guasco's release where he already has been determined to be neither a flight risk nor a danger to the community, and there is a strong public interest in preventing the unnecessary and unlawful detention of persons who otherwise should be set free. See Arias Gudino, 785 F. Supp. 3d at 48 (concluding "it is in the public's interest that individuals subject to immigration proceedings be afforded sound process and not be subjected to unlawful detention."); Hernandez, 872 F.3d at 995-96 (affirming the district court's reasoning that "any additional administrative costs to the government are far outweighed by the considerable harm to Plaintiffs'

constitutional rights in the absence of [an] injunction . . . [which] will likely prevent the unnecessary detention of non-citizens").

## IV. Conclusion

Injunctive relief is an extraordinary remedy. Guasco has demonstrated it is warranted here. Accordingly, the court grants Guasco's motion (Doc. 15) for a TRO. An appropriate order shall issue.

/S/ KELI M. NEARY
Keli M. Neary
United States District Judge
Middle District of Pennsylvania

Dated:   November 24, 2025